I am. Thank you. Good morning. My name is Andrew Valentine. I represent the appellant in the case, GSI Technology, who was the plaintiff in the underlying case. May it please the Court. I'm going to start with the issue of prevailing party, because regardless of how some of the other issues are resolved on this appeal, GSI is the prevailing party in this of the contract with GSI. The jury awarded GSI damages, special damages in the amount of $421,000, and general damages in the amount of $532,400. But in granting UMI's JMOL, the Court too narrowly read the terms of the agreement and substituted its opinions for the jury. And I'm going to talk about some of those damages issues in a moment. But regardless of how those damages issues are resolved, GSI is the prevailing party under Colorado law. Colorado law governs this contract, and the Supreme Court has precedent on point. And that's the case of Spencer v. The City of Aurora. In Spencer, the issue was, who is the prevailing party when the defendant is found to be in breach, but the plaintiff was not awarded damages? That's the same circumstance that we have here. In Spencer, the lower court found that the defendant, the breaching party, to be the prevailing party because the plaintiff did not obtain damages, just as UMI is arguing here. The Colorado Supreme Court reversed that ruling. The Colorado Supreme Court found that award of damages was not required. Specifically, the Court held that a party that prevails on liability and whose favor the verdict is entered is the prevailing party for purposes of the attorney's fees provision, even if there's no award of damages. And that's exactly the case we have here. And the Court was very clear and precise on that point. It says, it is the determination of culpability, not the amount of damages, that determines who is the prevailing party. It went on and said the jury verdict regarding liability on the breach of contract claims, not the jury's attribution of damages, controlled the issue of attorney's fees. Now while other states may do things different, the law in Colorado on this point is clear. And the rule makes good sense because it would not be good policy to allow a party found to be in breach of an agreement to obtain the benefit of that breach through a fee-shifting provision merely because damages were found to be uncertain or challenging. Let me ask you, I just had a question because I was trying to figure out, it sounds like below you indicated on the record that California law should be applied to the damages issue for the trade secret claim. And you were talking about damages right now, and you were talking about Colorado law. It seemed to make sense to me that this claim was under the California Uniform Trade Secrets Act, and the jury was being instructed using the California, I think, jury instructions, if I recall correctly. But for the trade secret claim, it was under the California Uniform Trade Secret Act, and it was California law that applies, but the contract has a Colorado law provision. And on the issue of who is the prevailing party, and in interpreting the contract, the Court is to apply Colorado law. For loss? Is that true for actual loss as well? I mean, because I'm just trying to figure out on the question, because you're arguing on appeal that the Colorado law also governs the question of whether GSI suffered an actual loss, which is a term that appears in the California statute. So I was just getting confused, and I don't know if you can help me out there. Right. Well, for the loss of damage for the trade secret claim, we are using California law. And so, I guess, specifically for actual loss, when we're having to review what happened here regarding what you are arguing regarding actual loss, are we applying California law or Colorado law? For the actual law on the trade secret claim. The actual loss. For actual loss, the actual loss comes from the Uniform Trade Secret Act of California, correct? I think our argument on appeal was that the Court improperly took away that actual loss. It found actual loss to be lost profits, and said lost profits were waived. And we've made an argument there under the contract, but that But I thought you were arguing Colorado law. Are you not arguing Colorado law with respect to actual loss? With respect to actual loss, we haven't applied the Colorado law to that argument, I do not believe, Your Honor. You've answered my question. So in terms of the prevailing party applying the principles of Spencer, GSI remains the prevailing party, whether it's ultimately determined whether damages are in its favor or not. In this case, the contract was the cornerstone of the trial. UMI's opening statement stated that this is a contract case. The issues related to the contract took up a majority of the days, and the two contract negotiators were on the stand for the better part of a week. The jury found UMI breached the contract. The jury rejected each of UMI's affirmative defenses, and UMI prevailed on none. And the jury awarded damages in GSI's favor. While the district court took those damages away, it let the verdict stand very and it would not upset the jury verdict on liability. It found that there was substantial evidence existed to support the breach of the non-compete provision, and it found that UMI did not challenge the verdict with respect to the breach of ownership, and that that should stand as well and was included in the verdict. It didn't disturb the jury's rejection of all of UMI's affirmative defenses. So no other party received an award, and UMI did not have a counterclaim. So significantly, it was UMI that proposed the California law in the first place, because that's where UMI resides. And perhaps now it regrets that it picked Colorado law, but when the parties picked that law, they agreed to follow the law of that state, and the Supreme Court is clear on who is the prevailing party in this case. It's GSI. UMI has cited no case in Colorado in which a party found to be in breach was found to be the prevailing party, much less awarded attorney's fees in the absence of a successful counterclaim. And UMI did not have a counterclaim in this case. So we believe the court committed error in denying GSI prevailing party status and that the case should be remanded to calculate and award reasonable prevailing party fees on behalf of GSI. But you acknowledge that Colorado law also says that the trial court's in the best position to determine who's the prevailing party. I do acknowledge that. Okay. I do want to move on to an issue of damage, though, because it affects this prevailing party as well. Again, regardless of how the damages plays out, GSI is the prevailing party under Spencer. However, the district court also erred in vacating the jury's award, both with respect to general damages and with respect to special damages. And I'm going to talk about general damages for a minute. With respect to general damages, the jury awarded $532,400, which represented the amount GSI paid as part of the contract to UMI. That's classic contract damages. The issue here is whether there was a waiver. And waiver requires an intentional relinquishment of a known right. Here, all of the parties, GSI, UMI, and the court understand understood that GSI was pursuing the amount of money it paid to UMI as part of the contract, as part of its damages. And, in fact, that's the amount that the jury awarded. GSI elicited testimony at trial, and it presented evidence in the amounts paid, both through witness testimony and in the form of exhibits, the invoices and payments of those amounts. GSI never waived or said that it would not seek return of the amount that it paid to UMI as part of the trial. It was argued in closing argument. Well, let's go over that because I want to make sure I understand. Because I think we're supposed to interpret the record as a whole. And it seems like on a number of occasions throughout the record, you stated that GSI was not seeking general damages. There are places in the record where we said we were not seeking general damages. Let me highlight a few of them for you, and so that we can get this in context. I think it said, S.E.R. 341, when UMI proposed a jury instruction on general damages for breach of contract, GSI objected, arguing the instruction was improper because GSI seeks only special damages. At S.E.R. 19-20, GSI's counsel later reaffirmed this waiver in open court, stating, we don't claim general damages on breach of contract. And this is where I think GSI was seeking to preserve general damages claim for the trade secret misappropriation, but ended up waiving it for the contract claim. And then at E.R. 19, you didn't provide, at least from what I could see or seek, a jury instruction on general damages for the breach of contract claim. So my question, because I know there's a lot at stake here, why doesn't that constitute waiver? We don't think it constitutes waiver because in the, and again, you talked about the context of the entire case. In the context of this case, it was clear that we as part of our damages. And what you've stated, I won't go into each one of those, but in the context of those statements, there's also a statement that we are seeking contract damages. And UMI acknowledged that itself, even in its brief. And it certainly acknowledged it at the time that those things were being discussed below. In fact, in the charge conference, UMI acknowledged that this, it says, unless they can prove a violation of the confidentiality provision, then I think they're limited only to the amount under the contract, which was $540,000. You're limited to the price of the contract. That's at E.R. 161 and 166. And even in their brief, they continue to state that. This provision effectively limited either party to general damages, meaning the value of the contract. So in the context of the discussion of general damages, it was clear that we were seeking return of the contract price. And again, if it's relinquishment of a known right, we made it clear we were, not only were we not relinquishing those rights, we were, in fact, seeking them. And that was acknowledged by UMI. I'm going to move on to a trade secret issue before I reserve the rest of my time. And this has to do with the trade secret damages, and specifically that the district court improperly trade secret misappropriation. And this has to do with jury instructions. With respect to the damages associated with misappropriation of trade secrets, the court first specifically instructed the jury that it could award lost profits as actual loss. Then, in the middle of deliberations, it instructed the jury that it could not. Lost profits is a usual remedy for misappropriation of trade secrets, and the jury was originally instructed on that. And that was jury instruction 26. However, the court then imposed its view that lost profits were special damages and excluded from the contract and instructed the jury that actual loss is any loss excluding any GSI lost profits or unjust enrichment. So the new instructions, which were 26.1 and 26.2, were directly contradictory to the original instructions. So, in essence, the instructions amounted to the court saying you may award lost profits so long as you don't award lost profits. And this led to jury confusion. The jury found for GSI and found that there was a misappropriation of trade secret against UMI and found liability and that there was an actual loss, but awarded damages of zero. What evidence did you present or GSI present at trial of lost profits or future profits? The evidence was presented by an expert. Well, first through witnesses, but also through an expert. The profits were profits that would have obtained in gaining a contract with Cisco Systems, which was the purpose of the contract. That was your evidence of lost profits? Yes. And I want to reserve, I think, the rest of my time, but I will just point out that lost profits, it was improper for the court to jump to the conclusion that were consequential or special because lost profits is not an absolute, is not, limitation of liability was not an absolute bar on lost profits. And we've cited the Pencro case, which is a Tenth Circuit case with a very similar situation in which Judge Gorsuch, then sitting at the Tenth Circuit, explained the difference and said lost profits can be either benefit of the bargain, direct damages or consequential damages. And in this case, and we've briefed this, we believe they were direct damages and it was improper for the Good morning, Your Honors, and thank you for this opportunity. My name is Robert Ruyak and I represent United Memories, who is the defendant below and who is the appellee and cross-appellant today. I'd first like to address quickly a couple of the issues raised by my is that we were the prevailing party in this case. First on the issue of whether or not the law applies, it is very clear to us that what we had here was a contract. It was the sole relationship between the parties. It had a fully integrated integration clause, which said that no agreements or other means outside were required. It had, because it was between a very large company and a very small company in Colorado, which only had 7 to 10 employees, it had a very serious and important risk-sharing provisions in it. One was a limitation of liabilities provision, very importantly, and that one, because for a big company to work with a small company has to be protected. This was a meager contract. It was for $500,000 worth of work, not for some innovative product, but to make a copy of a pre-existing commodity product that was on the market by a big Micron company. The risk-sharing is really important because it had two features. One was limitation. The other was the fee shifting in this case, which was a deterrence to bringing massive, unusual, frivolous, ridiculous, pointless litigation against either one of the companies. Unfortunately, that's what happened here. While the contract was only nine months in duration, it was terminated and fully performed by both parties. GSI paid. UMI performed all that was necessary to complete the design. Five years later, when UMI is competing for this massive contract from Cisco with GSSI, all of a sudden there's a lawsuit for $40 million in special and consequential damages against this little company by GSI. The problem was the contract limited that. It said that there were not permitted to be any special or consequential damages under any claim but violation of the nondisclosure portion, which was the confidentiality provision, which only related, as in all contracts, to information provided by one party to the other during the course of the relationship. It did not refer to anything created during the relationship and the contract. That was handled by other provisions of the contract, such as the patent provision and the ownership provision. It limited everything else. Under this agreement, it limited torts, contracts, any cause of action, including misappropriation of trade secrets, to general damages only. GSI could have gone somewhere else to get this design. They didn't have to use our little company. But they chose to do it and they chose to abide by that provision. And as a result, the only damages affordable under this contract for any other claim were general damages. Now, what happened there? They waived them, but not just waived them, they affirmatively disclaimed them, not at the beginning of the case, but right before trial. After virtually millions of dollars had been spent to defend this case from ultimate bankruptcy, the record shows that this little company was only making a million dollars a year max, but had a $40 million threat against it. On the eve of trial, they object to our jury instruction on general damages saying we are not seeking general damages breach contract. Nope. When the judge asked them in open court, they also said we are not seeking them. There is no question in this case the judge was right at the trial level. Judge Grewell was right. They waived and affirmatively disclaimed general. So what's that leave us with? Well, these are only two things. General damages only for the misappropriation of trade secrets, which the jury found there was zero, because they found that there was no loss at all, because there was no evidence of loss at all, and the judge reversed the jury's determination on the breach of confidentiality provision because there was no disclosure on the record of any information from GSI to UMI at all. And he went in very great detail to go through the record to show that that was the case. Right now, Mr. Valentine said that they did produce evidence of loss. Well, the only evidence they produced was barred by the court. What they did was said that the only loss was this attempting to get a contract between not UMI, but these two big companies, the other defendant and GSI, the contract with Cisco. The problem was that contract was awarded in 2012. Even of the best information at trial, ISSI, the big company competing with them, never had any information from UMI until 2013. So Judge Grewell ruled on summary judgment that the contract, the award of the contract between UMI and ISSI could not be the basis for damages. Now, the problem was that was all their expertise had. And so they put it on a trial. We objected to it. We moved to strike it on the basis of the judge's summary judgment order. And when it came to the jury instructions, the judge agreed. And he amended the jury instruction, and we'll get to that in a minute, to show that he had granted summary judgment on that element of the case, their evidence. So what we have here really is a case that was pointless. It was pointless. There were 14 claims, including antitrust, RICO, unfair competition, fraud, all these claims, some of them frivolous, some of them ridiculous, none of them with a point, because none of them were a basis for damages, not a single one. And if you think about it, Your Honor, if they had brought a case they thought they had, which was breach of the trade secrets, the most they could recover was $521,000. My little client could have paid them that $525,000 and walked away. Instead, they had to spend millions in defense because of this $40 million claim that had no basis whatsoever, none. And so the conclusion of that is that this was exactly what the contract was intended to protect. And it is under Colorado law. It is Colorado controls here, and despite what my colleague said on the other side, Spencer does not control. Klein controls. Anderson controls. Those cases are in our brief. Spencer was a case in which the plaintiff won because he had two claims. One was breach of contract, and one was to enforce the contract settlement agreement. And the defendant breached both. At trial, the plaintiff won both, but the court said you cannot collect damages for the breach of the settlement agreement because you collected damages for breach of the actual agreement. And therefore, the defendant said, well, then I should get my attorney's fees because you didn't win on the breach of the settlement agreement, only on the main agreement. And the court said, no, wait a minute. They did win. They won damages. They brought two claims. You can plead in the alternative. And also, they were entitled to enforce the settlement agreement. Spencer has nothing to do with this case. It stands for the proposition that if you try to enforce the settlement agreement and you do it, you can still collect your attorney's fees. Klein, which came out after we briefed this case, which is a very important case, we think. I want to just cite to it for a minute because it's not in our briefs. It came out later and we filed a supplemental letter. Klein is on all fours with this case. And it's very on Spencer because Spencer is not the case. But in that case, the court found that the defendant was entitled to their attorney's fees and costs because, number one, the defendant defeated the claims against them except for $1. In that case, the jury did find a breach, but awarded only nominal damages. Yet the court said that was the principle in the case. The defendant was successful. And under Colorado law, in order to obtain a breach of contract, damages is a requisite element. They also said the defendant withstood plaintiff's litigious onslaught and ultimately defeated plaintiff's goal of forcing them out of business. That's what happened here. Your Honor, it's different for a plaintiff and a defendant in a case. Let's face it, I'm a prevailing party. To be a plaintiff to prevail, you have to bring a solid claim. You have to get something of benefit. Whether it's damages, injunction, rescission of the contract, alteration of the parties, you've got to get something. That's how you prevail as a plaintiff. GSA got none of that here. Zero. As a defendant, your job and my job at trial was to avoid that, to successfully defend my clients so that I don't have a money judgment or an injunction or a rescission of the contract or whatever it is. It's different for a plaintiff and defendant. And particularly when a plaintiff is larger, brings that onslaught of litigation that has to defend, that's important on the prevailing party. And Klein found the defendant to the prevailing party. Also said the plaintiff's lost on the predominant part of the claim. I think it's clear in our claim here, the only real claim of any potential for them was breach of the confidentiality provision. That's the only one that could get special or consequential $40 million in damages. It's only one. The others were limited to general, which they waived. And so with the breach of confidentiality, there was never any evidence in the entire record, if you review this de novo, there was never an identification of a single element of confidential information passed from GSI to UMI. As a matter of fact, when the contract was concluded, and that's the letter that is in evidence in this case, on that fact, we wrote a letter to them saying if we have any confidential information that belongs to you, please tell us and we'll return it or destroy it. And they agreed there was nothing. They never responded. Judge Grewal thoroughly went through the record in detail. You've seen that in the underlying opinion. There was no breach of confidentiality. Therefore, there was no basis for this $40 million attempted judgment. And to add insult to injury, the $40 million he had ruled was unavailable in summary judgment because it relied solely and exclusively on a bid for a contract that occurred before any disclosure of information ever occurred. On the jury instructions, Your Honor, I have only two comments, and I'll try to reserve a few minutes. My first comment is that the judge, as judges have to do, had to correct it during trial. His original instruction over our objection did say that for a breach of the trade secret agreement, there could be lost profits and unjust enrichment. That was wrong. Those are special and consequential damages. The contract limited that. During the course of trial and in the response on the verdict form, it only allowed the jury to put in general damages, even though he had said lost profits and unjust enrichment. The jury was pretty smart. Here, they came back and said, well, we don't understand. What are the general damages, then, that we need to identify? And that raised with the judge the concept that he realized he had made a mistake in the original instruction. And he gave two corrective ones where he used the right standard, the standard under trade secret law, which is any actual loss, but not because of the contract you had between you, lost profits or unjust enrichment. Any actual loss, wide open, any actual loss was acceptable under that as general damages. The problem was there was absolutely no evidence, as the judge felt, not single scintillant evidence, that there was any loss to GSI from any disclosure of these four trade secret schematics out of 600 of them. None. The jury couldn't put a value on them. There was no evidence. And they couldn't get, because of a summary judgment order, damages otherwise. Finally, Your Honor, I think it's very important to understand, because in the context of these cases, the record, I think, will lay this out, that what we really had here and why the jury found zero on the trade secret, they found that because there were 633 schematics that were provided from UMI's own previously created materials, which were licensed under this agreement, they contested 25 may contain trade secret information created during the course of the relationship. The jury found that four may have trade secret information created in the course of the relationship. We believe there was no evidence for that. The jury was wrong. But even if you accept that, it was explained to the jury fully in the course of the proceedings that those four had no value. A DRAM, it was explained, has 32 layers and approximately 25 components on each layer, over 600 components. And it has a thing called a layout that tells how to put those together as a blueprint. The layout, importantly, was never disclosed to anyone. It was never said to be a trade secret and never disclosed to anyone at all. So what you have is an example I'd like to give you. If you go into a store looking for a puzzle of the nation's capital, and the guy who's behind the counter says, I'll sell you four pieces of cardboard of irregular shape, four pieces of that puzzle, but there's no picture on it, what's the value? And the jury and everyone in that courtroom and the jury says, no, you can't do anything with four pieces of cardboard of irregular shape. You couldn't do very much with even a hundred of those of irregular shape. You need to have them all and you need to have, most importantly, the picture so you know how to put those parts together. All the parts belong to UMI. The picture was created for GSI and was never disclosed to anyone. From that basis, the witnesses testified that the individual components that were found to be trade secrets had no value. That's the record evidence. And that's what the judge found, that there was no proof by GSI as to how those four supposed components with some trade secrets had some value. Your Honor, I'd like to reserve the rest of my time for rebuttal. Thank you. Thank you. I realize I have limited time, so I'm going to try to hit some of the high points. So first, on the motion for summary judgment that UMI's counsel keeps referring to, that was brought by a different party that is no longer part of this appeal and it related to them. It did not relate to UMI. With respect to the confidentiality provision, and this is in our briefs, but I just want to underscore it, the key argument here that UMI keeps making is that there was no breach of confidentiality and that the court below agreed with them. The point is that the court read the confidentiality provision way too narrowly and did not require the strict requirement that something actually be physically handed over from GSI to UMI. The entire purpose of the agreement was for UMI to create confidential new technology schematics for GSI. Those documents were marked confidential by UMI when they were turned over to GSI. Those documents, those schematics were owned by GSI as part of the contract. Everyone understood that. UMI acknowledges that. That work product, the work product of the contract, that's the confidential information and when UMI took that information, and it wasn't just four puzzle pieces, they turned over the entire work product, it was literally turned over to ISSI that breached the contract and breached the confidentiality provision. With respect to the cases that UMI has discussed with respect to prevailing party, I mean, let's break these down a little bit. One of them did come out after the briefing. Several of them they've cited in their final brief, which should have been cited in their earlier brief, but every one of those cases that they're using to cite that the defendant was a prevailing party are cases where there's a counterclaim, that the defendant had a counterclaim and the defendant obtained damages as a result of that counterclaim monetary damages. So in that situation, of course the defendant is the prevailing party. That's not the case we have here. In the Winchester case, the defendant had a counterclaim and won almost a million dollars. In the Wheeler case, the defendant's award was six times greater than the plaintiff's. In the planning partner's case, the judgment was reduced by the amount of the counterclaim, but it was also greater. In the Klein case, the new case, and we've submitted our own letter on that and distinguish it for other reasons as well, there was a counterclaim and the plaintiff owed more money on the counterclaim to the circumstances under which the defendant in those parties was found to be the prevailing party. But we don't have that in this situation. We have a situation where GSI was deemed to be the, the verdict was upheld by the district court with respect to the breach of contract and the unfair, and the misappropriation of trade secret claims. I mean, and, and Judge Graywall, you know, he wrestled with that. But he came to that conclusion that UMI, and there's quotes from him in his order, UMI was found liable on the two claims that dominated this litigation. And so it upheld the jury verdict of breach of contract and a misappropriation of trade secret. And under Spencer, GSI is the prevailing party. Thank you. Thank you. Your Honor, I think that to, to go back to a question that you asked, Your Honor, about the standard, we believe the standard for Judge Graywall here was abuse of discretion. And we believe in this one instance he did abuse his discretion because he used a different standard for plaintiff and defendant. But the plaintiff, he said correctly, they're not the prevailing party because they received no benefit whatsoever from this litigation, which is what Colorado law says, and particularly the Klein case, which I recited to you was most recent. But when it came to us, he applied, you didn't win on every issue, which is not the standard. That's not the standard for a defendant. The defendant is whether they avoid liability in any form. And what I must say is this. This isn't a philosophical discussion I don't think we should have about whether, if someone has a technical breach of a contract, that they shouldn't get their attorney's fees. That's not the question here. The question is one of contract law. And these parties, because the unevening bargaining position between them agreed in the contract that the person who prevailed on a dispute would get their attorney's fees. That's what was agreed upon here. And if we can't enforce that kind of a contract, think of the door it opens. Any large company could do what these guys did and bring massive, massive lawsuits against a small company to no end, to no benefit. They didn't ever intend to claim general damages for any of this, except for the misappropriation of trade secrets, which didn't go anywhere. No one used those trade secrets for anything. But they put a small company in danger of bankruptcy, even in defending itself because of a claim that just wasn't there. And if contracts mean anything to us, when we share risk, we have to share risk. If they had won, I'll guarantee you, if they had won some kind of benefit, they'd be in here trying to sock us for all their attorney's fees, which are much higher than ours. They're a bigger company and they have a lot more claims against us and another company. But we are here because we entered into a contract, a small contract, that limited their ability to bring this massive slew of litigation against us. And the only deterrent was, if you don't prevail, you have to pay us the attorney's fees you cost us. We're not seeking some benefit here. We lost a lot of other things in this litigation. We lost effort. We lost business. We lost everything being a defendant in this case. But what we're asking for is that the court make us whole under the contract because the contract said, if you are faced with this kind of litigation and the other party does not prevail against you and get the benefit of it, you will at least get back the costs and fees you spent to maintain your position and to defend that case. Under Colorado law, that is what happened here. That is Klein. That is Anderson, which is a Supreme Court case that's above all of these that says that you cannot win if you do not have a benefit from that litigation. And we're on here at Peel simply because nothing, this litigation, this slew resulted in nothing for them, zero. But it cost us dramatically. But that was between the parties that was put in the agreement. It was part of what the bargain was. And we are entitled to have a remand for attorney's fees and costs to make up for that. Thank you very much. Thank you. Thank you both for your arguments here today, Mr. Valentine, Mr. Rayak. The matter of GSI Technology v. United Memories and Integrated Silicon Solution is now submitted. The final case on our calendar, Frederick Gardner v. Commissioner of Internal Revenue, has been submitted on the briefs. So that concludes our docket for today and this week. We are adjourned. Thank you very much.
judges: Gould, Murguia, Freudenthal